UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JOHN SATAWA,

        Plaintiff,

v.

Case No. 2:09-cv-14190
Hon. Gerald E. Rosen

BOARD OF COUNTY ROAD COMMISSIONERS OF MACOMB COUNTY ("Macomb County Road Commission"); FRAN GILLETT, individually and in her official capacity as Chairperson, Macomb County Road Commission; ROBERT P. HOEPFNER, individually and in his official capacity as County Highway Engineer, Macomb County Road Commission,

        Defendants.

## MOTION OF THE FREEDOM FROM RELIGION FOUNDATION, INC. FOR LEAVE TO FILE A BRIEF AS AMICUS CURIAE

The Freedom From Religion Foundation, Inc. ("FFRF") respectfully requests that this Court grant leave to file an amicus curiae brief in this matter for the reasons set forth herein. In support of its Motion, FFRF states as follows:

1. FFRF is a non-profit organization with approximately 14,000 members throughout the United States, including members in Macomb County, Michigan.

2. FRRF is an educational group working for the separation of state and church. Its purposes, as stated in its bylaws, are to promote the constitutional principle of separation of state and church, and to educate the public on matters relating to nontheism. FFRF works to achieve

these purposes by advocating for and representing its membership in Establishment Clause claims.

3. According to Defendants, the initial investigation into the propriety of his nativity display was prompted by a letter of complaint sent by FFRF to Defendants. *See* Response to Plaintiff's Motion for Temporary Restraining Order/Preliminary Injunction, Ex. E.

4. FFRF therefore seeks leave to file an amicus curiae brief in an effort to assist the Court in its consideration of the questions presented in the instant lawsuit. A copy of the proposed brief is attached hereto.

5. FFRF has requested consent of the parties to file an amicus curiae brief. Defendants have consented to the relief requested in this Motion, but Plaintiff's concurrence has not yet been forthcoming.

WHEREFORE, the Freedom From Religion Foundation, Inc. respectfully requests that this Honorable Court grant its Motion and allow it to file the amicus curiae brief attached hereto.

Respectfully submitted,

BUTZEL LONG, a professional corporation

December 9, 2009

/s/ Danielle J. Hessell
Danielle J. Hessell (P68667)
Stoneridge West
41000 Woodward Avenue
Bloomfield Hills, Michigan 48304
(248) 258-1616
hessell@butzel.com
Attorneys for Freedom From Religion Foundation, Inc.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JOHN SATAWA,

       Plaintiff,

v.

Case No. 2:09-cv-14190
Hon. Gerald E. Rosen

BOARD OF COUNTY ROAD COMMISSIONERS OF MACOMB COUNTY ("Macomb County Road Commission"); FRAN GILLETT, individually and in her official capacity as Chairperson, Macomb County Road Commission; ROBERT P. HOEPFNER, individually and in his official capacity as County Highway Engineer, Macomb County Road Commission,

       Defendants.

---

**THE FREEDOM FROM RELIGION FOUNDATION, INC.'S**
<u>**BRIEF AS AMICUS CURIAE**</u>

# **TABLE OF CONTENTS**

Index of Authorities .................................................................................................................. i

Introduction ............................................................................................................................. 1

Discussion ............................................................................................................................... 1

      A.    Establishment Clause jurisprudence and the modern tests used for analyzing the constitutionality of religious displays. ................................................................... 1

           1.    The *Lemon* Test ............................................................................................ 2

           2.    The Endorsement Test ................................................................................. 3

           3.    The Coercion Test ....................................................................................... 4

      B.    The *Lemon* and Endorsement Tests have been applied in nativity scene cases with mixed results but, in general, the government may not host a holiday display that consists solely of a nativity scene. ........................................................................ 4

      C.    The type of forum is an element of the Establishment Clause analysis, but it is not dispositive ........................................................................................................... 6

      D.    In the instant matter, a reasonable observer would conclude that the placement of the crèche constitutes government endorsement of the Christian religion .............. 7

           1.    Disclaimers of private ownership do not cure a constitutional violation ............................................................................................... 9

           2.    Permanent fixtures near the nativity scene are not relevant to the analysis. ........................................................................... 10

Conclusion ............................................................................................................................ 11

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**
*ACLU v. County of Delaware,*
   726 F. Supp. 184, 190 (S.D. Ohio 1989) .................................................................................. 10
*Allegheny County v. ACLU,*
   492 U.S. 573, 595 (1989) ................................................................................ 3, 4, 5, 6, 7, 9, 10
*Capitol Square Review and Advisory Board v. Pinette,*
   515 U.S. 753, 779-80 (1995) ................................................................................ 3, 6, 7, 8, 9, 10
*Chicago Police Dept. v. Mosley,*
   408 U.S. 92 (1972) ...................................................................................................................... 9
*Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.,*
   473 U.S. 788 (1985) .................................................................................................................... 8
*Everson v. Board of Ed. of Ewing,*
   330 U.S. 1, 16 (1947) .............................................................................................................. 1, 2
*Lee v. Weisman,*
   505 U.S. 577 (1992) .................................................................................................................... 4
*Lemon v. Kurtzman,*
   403 U.S. 602, 614 (1971) ................................................................................................. 2, 3, 4, 5
*Lynch v. Donnelly,*
   465 U.S. at 688 (1984) ..................................................................................................... 3, 4, 5, 6

**Other Authorities**
Hon. Avern L. Cohn & Bryan J. Anderson, *Religious Liberty in Public Life, Ten Commandments, Other Displays & Mottos*, First Amendment Center (June 2006) .................... 2

**Constitutional Provisions**
U.S. CONST. amend. I ......................................................................................................................... 1

## Introduction

Amicus curiae the Freedom From Religion Foundation, Inc. ("FFRF") is a non-profit organization whose primary purposes are to protect the constitutional principle of separation between state and church and to represent the rights and views of nontheists and free thinkers. FFRF works to achieve these purposes by advocating for and representing its membership in Establishment Clause cases such as the case at bar.

Plaintiff John Satawa and his family have, for over sixty years and without a permit, placed a stand-alone nativity scene, or crèche, on a public median on Mound Road in Macomb County, Michigan. This year, Defendants denied Plaintiff's request for a permit to continue to place the nativity scene on this public property, and Plaintiff now argues that this denial violates his right to free speech and also violates the Establishment Clause of the First Amendment of the United States Constitution. FFRF submits this amicus brief in order to discuss guiding precedent on the Establishment Clause of the First Amendment of the United States Constitution and, in that context, FFRF contends that Plaintiff's nativity scene is inherently religious, and its display on County property would constitute an illegal endorsement of religion by the County government.

## Discussion

**A.     Establishment Clause jurisprudence and the modern tests used for analyzing the constitutionality of religious displays.**

"Congress shall make no law respecting an establishment of religion...." U.S. CONST. amend. I. Thomas Jefferson is often quoted for his view that the Establishment Clause should be considered "a wall of separation between Church and State." *Everson v. Board of Ed. of Ewing*, 330 U.S. 1, 16 (1947). The Supreme Court in *Everson* even adopted this view, stating that "[t]he

1

First Amendment has erected a wall between church and state. That wall must be kept high and impregnable. We could not approve the slightest breach." *Id.* at 18. The Supreme Court continues to recognize that the purpose of the Establishment Clause is "to prevent, as far as possible, the intrusion of either [the church or the state] into the precincts of the other." *Id.* at 672 (quoting *Lemon v. Kurtzman*, 403 U.S. 602, 614 (1971)).

*Everson*, in 1947, signaled the beginning of the modern era of Establishment Clause jurisprudence, and since that time the Supreme Court has relied primarily on three tests to determine whether the Establishment Clause has been violated: the *Lemon* test, the endorsement test, and the coercion test. *See, e.g.,* Hon. Avern L. Cohn & Bryan J. Anderson, *Religious Liberty in Public Life, Ten Commandments, Other Displays & Mottos*, First Amendment Center (June 2006) *available at* http://www.firstamendmentcenter.org/rel_liberty/establishment/topic.aspx?topic=public_display. These three tests and their application are discussed below.

    **1.**     **The *Lemon* Test**

Although the *Lemon* test has been applied inconsistently and some Justices have openly stated that it should not be used, courts nevertheless continue to apply this test either explicitly or in principle. The test, named for the case in which it was articulated, *Lemon v. Kurtzman*, 403 U.S. 602 (1971), sets forth a three-pronged inquiry. To pass the *Lemon* test, the government conduct (1) must have a secular purpose; (2) must have a principal or primary effect that does not advance or inhibit religion; and (3) cannot foster an excessive government entanglement with religion. *Id.* at 612-13. To determine whether the entanglement is excessive, courts should examine the character and purposes of the institutions that are benefited, the nature of the aid

2

provided, and the resulting relationship between the government and the religious authority. *Id.* at 615.

### 2. The Endorsement Test

After various cases applied the *Lemon* test with varying results, the Supreme Court's most recent opinions on Establishment Clause issues apply the endorsement test as an extension or clarification of the *Lemon* test. The endorsement test emphasizes government neutrality toward religion and a fact-intensive analysis. First articulated in Justice O'Connor's concurring opinion in *Lynch v. Donnelly,* 465 U.S. at 688 (1984), this test states that the government violates the establishment clause when it endorses or disapproves of religion. "Endorsement sends a message to non-adherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community." *Id.* In her concurrence in *Capitol Square Review and Advisory Board v. Pinette,* 515 U.S. 753, 779-80 (1995), Justice O'Connor clarified that the endorsement test should be applied according to a "reasonable observer" standard.

Justice O'Connor's framework was adopted in *Allegheny County v. ACLU,* 492 U.S. 573, 595 (1989), the leading modern case on the endorsement test and government holiday displays, because it articulated a method for "determining whether the government's use of an object with religious meaning has the effect of endorsing religion.... [T]he question is what viewers may fairly understand to be the purpose of the display." *Id.* (internal citations omitted). This question "turns upon the context in which the contested object appears." *Id.*

### 3. The Coercion Test

The third test that has been utilized by the Supreme Court in Establishment Clause cases is known as the coercion test. Advanced by Justice Kennedy in *Lee v. Weisman*, 505 U.S. 577 (1992), this test states that "at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion or religious faith, or tends to do so." *Id.* at 587 (internal citations omitted). However, the *Lee* case was decided by the Court without the same intensive analysis undertaken in *Lemon*, *Lynch*, or *Allegheny County* because, according to the Court, controlling precedents related to prayer in public schools compelled the holding that the school prayer at issue was unconstitutional. *Id.* at 586-87. Therefore, the usefulness of this test is doubtful and its application has been limited and, in fact, it has not been adopted in a nativity scene case.

### B. The *Lemon* and Endorsement Tests have been applied in nativity scene cases with mixed results but, in general, the government may not host a holiday display that consists solely of a nativity scene.

The Supreme Court has not settled on a single approach for analyzing Establishment Clause issues and, particularly, holiday display cases. Rather, the Court has used one or more of the above tests either explicitly or without expressly relying on them, to reach fairly disparate conclusions. In any event, all Establishment Clause cases tend to be very fact-intensive, with the outcome highly dependent upon the facts and circumstances surrounding the holiday display at issue.

It is clear, however, that the Supreme Court has held that the Establishment Clause of the First Amendment prohibits government from maintaining, erecting or hosting a holiday display that consists solely of a nativity scene. *See Allegheny County v. American Civil Liberties Union,*

*Greater Pittsburgh Chapter*, 492 U.S. 573 (1989) (holding that a sole nativity display at the county courthouse was unconstitutional). The *Allegheny County* Court discussed the *Lemon* test and applied the endorsement test in determining whether a nativity scene displayed on government property is permissible under the establishment clause, stating that courts must assess whether the display has the purpose or effect of endorsing religion. *Id.* at 598 (stating that "the government's use of religious symbolism is unconstitutional if it has the effect of endorsing religious beliefs....").

On the other hand, the Supreme Court has determined that nativity scenes or other religious displays have not violated the Establishment Clause under some circumstances, such as where the display is part of a larger, secular holiday display. Even the *Allegheny County* case, for example, held that the display outside the Allegheny City-County Building of a Chanukah menorah, a Christmas tree, and a sign saluting liberty was permissible because the display simply recognized that "both Christmas and Chanukah are part of the same winter-holiday season, which has attained a secular status in our society." *Id.* at 616. Again, the Court applied the endorsement test in holding that the menorah displayed with a Christmas tree, to a "reasonable observer," "must be understood as conveying the city's secular recognition of different traditions for celebrating the winter-holiday season." *Id.* at 620.

Before *Allegheny County*, the Court addressed a nativity scene erected in a private park in the downtown shopping district in Pawtucket, Rhode Island. *Lynch v. Donnelly*, 465 U.S. 668 (1984). That crèche was part of a larger holiday display, including a Santa Claus house with a live Santa distributing candy, reindeer pulling Santa's sleigh, a live 40-foot Christmas tree with lights, statues of carolers in old-fashioned dress, candy-striped poles, a "talking" wishing well, a

5

large banner proclaiming "Season's Greetings," a miniature "village" with several houses and a church, and various "cutout" figures, including a clown, a dancing elephant, a robot and a teddy bear. *Id.* at 670. In this setting, the Court held that the city's placement of the crèche did not violate the Establishment Clause because there was a legitimate secular purpose for inclusion of the crèche in the display—namely, to celebrate the Christmas Holiday and to depict the origins of that Holiday. *Id.* at 680. Although the "reasonable observer" standard was articulated in Justice O'Connor's concurrence, subsequent cases like *Allegheny County* have clarified that the reasonable observer standard is crucial in determining whether the context and setting of the holiday display mitigate the overtly religious message of a crèche.

## C. The type of forum is an element of the Establishment Clause analysis, but it is not dispositive.

In the modern Establishment Clause cases, the forum for the holiday display has been in or in front of a government building, such as a courthouse. *See Allegheny County*, 492 U.S. 573, and *Lynch*, 465 U.S. 668. The Supreme Court has recognized in at least one Establishment Clause case involving a different forum that "[t]he right to use government property for one's private expression depends upon whether the property has by law or tradition been given the status of a public forum, or rather has been reserved for specific official uses." *Capitol Square*, 515 U.S. 753, 761 (1995). In that case, the Ku Klux Klan petitioned to place a cross on the 10-acre, state-owned plaza surrounding the statehouse in Columbus, Ohio. An Ohio statute made the square available for use by the public. The board responsible for regulating public access had also permitted a variety of unattended displays on the square, including a lighted Christmas tree, a privately-sponsored menorah, and displays for the United Way's fundraising campaign. *Id.* at 758.

6

While the board had approved an application to place a menorah on the square, it denied an application received the same day from the KKK to place a cross on the square. The only reason given by the board was an attempt to avoid the official endorsement of Christianity. *Id.* at 759, 761. The *Capitol Square* Court held that the government could not prohibit the KKK's private expression of religious speech because Capitol Square was a "genuinely public forum, ... known to be a public forum, and has been widely used as a public forum for many, many years." *Id.* at 766. Again, Justice O'Connor reiterated that "the endorsement test necessarily focuses upon the perception of a reasonable, informed observer." *Id.* at 773.

### D. In the instant matter, a reasonable observer would conclude that the placement of the crèche constitutes government endorsement of the Christian religion.

The crèche is solely an expression of adherence to the Christian religion. A reasonable observer understands that the roadway median is government property. Thus, the placement of a nativity scene on government property without any holiday or seasonal content can only be interpreted by a reasonable observer as government support, or endorsement, of Christianity.

This case must be examined in the context of the Supreme Court's Establishment Clause jurisprudence. In fact, *Allegheny County* is almost on all fours with the facts of this case, except that the location of the crèche in this matter is on a public median rather than the courthouse steps. Admittedly, this makes this case a closer issue than in *Allegheny County*, because "the question [under the endorsement test] is what viewers may fairly understand to be the purpose of the display..." and that question "turns upon the context in which the contested object appears." *Allegheny County*, 492 U.S. at 595.

In the instant matter, the forum is still government property, but instead of the courthouse or city building, the crèche was placed on the median of a busy intersection. Plaintiff argues that

7

the forum analysis is crucial and dictates that, because streets, sidewalks, medians and parks are traditional public fora, the government's ability to restrict speech in that forum is sharply limited. *See Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788 (1985) (discussing the three types of public fora). But as in *Capitol Square*, this analysis must be viewed in context of the reasonable observer. *Id.* at 773 (O'Connor, concurring).

Here, the Court may note that even in a traditional public forum, the government "may impose reasonable, content-neutral time, place, and manner restrictions, ... but it may regulate expressive *content* only if such a restriction is necessary, and narrowly drawn, to serve a compelling state interest." *Capitol Square*, 515 U.S. at 761 (emphasis in original). Amicus FFRF will not re-argue Defendants' arguments on this point, but simply points out that in *Capitol Square*, the government advanced "a single justification for closing Capitol Square to respondents' cross: the State's interest in avoiding official endorsement of Christianity, as required by the *Establishment Clause*." *Id.* Here, Defendants have articulated other justifications for refusing to allow Plaintiff to continue to place his nativity scene on the public median: namely, that Defendants' responsibilities include providing for the health and safety of residents traveling on Macomb County's roads, and the crèche could pose a hazard to that health and safety.

FFRF suggests another, similar justification exists. Even if Plaintiff were correct that his particular expression of private, religious speech, in the form of a large wooden structure containing a nativity scene, does not pose a hazard to motorists, Defendants must account for the fact that "[o]nce a forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say."

8

*Chicago Police Dept. v. Mosley*, 408 U.S. 92 (1972). Therefore, if Defendants must allow Plaintiff to place his crèche on public property in order to protect his free speech rights, then Defendants must also allow other private citizens or groups to place similar "speech" on the median in question. Certainly, if this median is, in fact, a traditional public forum so that the government may not limit the private speech of citizens who wish to place unattended structures there, the placement of the crèche may indeed be on the precipice of a very slippery slope.

**1.      Disclaimers of private ownership do not cure a constitutional violation.**

In *Allegheny County*, the Supreme Court found that, despite a sign indicating private ownership of the crèche by a Roman Catholic organization, the sole display of the crèche outside the courthouse was an Establishment Clause violation. The Court stated that "by permitting the display of the crèche in this particular physical setting, the county sends an unmistakable message that it supports the Christian praise to God that is the crèche's religious message. ... The fact that the crèche bears a sign disclosing its ownership by a Roman Catholic organization does not alter this conclusion. On the contrary, the sign simply demonstrates that the government is endorsing the religious message of that organization, rather than communicating a message of its own." *Allegheny County*, 492 U.S. at 600 (internal citations omitted).

In this case, Plaintiff argues that he is willing to place a sign next to the nativity scene indicating that it is privately owned and does not reflect the views of the Road Commission. However, as in *Allegheny County*, the religious message of a crèche on government property may be too pervasive to be mitigated by the presence of a disclaimer. Plaintiff relies upon *Capitol Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753 (1995), where the Court determined that a private organization must be permitted to place a cross on government

9

property, where the cross had a plaque affixed that disclaimed government association or sponsorship. However, the *Capitol Square* case is distinguishable because that property had, by law, been given the status of a public forum and approval was given to an application to place a large menorah on the square the same day that the application to place the cross on the square was denied. Certainly, the facts of *Allegheny County*'s crèche are much closer to the instant matter than the facts of *Capitol Square*.

### 2. Permanent fixtures near the nativity scene are not relevant to the analysis.

Plaintiff also argues that, because Defendants have allowed other private organizations to place permanent or semi-permanent structures on the median, that the refusal to allow his crèche must be content-based. However, other courts have examined cases in which other permanent fixtures were located near the religious display at issue and were not relevant to the analysis of the display. In *Allegheny County,* the Court noted that "[e]ven if the Grand Staircase occasionally was used for displays other than the crèche (for example, a display of flags commemorating the 25th anniversary of Israel's independence), it remains true that any display located there fairly may be understood to express views that receive the support and endorsement of the government." *Allegheny County,* 492 U.S. at 600, fn 50. In *ACLU v. County of Delaware*, 726 F. Supp. 184, 190 (S.D. Ohio 1989), the court examined a crèche that was placed on the front lawn of the county courthouse. The county argued that the "peace tree," flagpole and war memorials were not placed near the display or were permanent fixtures, and so were "not relevant to this analysis." *Id.*

Similarly here, the permanent gazebo, trees and other plants, and antique farm equipment placed on the median would not be viewed by the reasonable observer to be part of the same

10

holiday display as the crèche and, in fact, have no holiday connotations whatsoever. There is no reasonable interpretation that the crèche is a part of a larger, secular holiday display placed on government property; on the contrary, the placement of the crèche is as a stand-alone display and this, as the Supreme Court has repeatedly pointed out, would cause a reasonable observer to believe that it constitutes government endorsement of the Christian religion.

## Conclusion

For these reasons, amicus FFRF respectfully submits that Plaintiff's nativity scene, if displayed on the public median with the permission of the Macomb County government, would constitute an illegal endorsement of religion and would therefore violate the Establishment Clause of the First Amendment to the United States Constitution. FFRF believes that Plaintiff's claims should be dismissed.

Respectfully submitted,

BUTZEL LONG, a professional corporation

December 9, 2009

By: /s/ Danielle J. Hessell
Danielle J. Hessell (P68667)
Stoneridge West
41000 Woodward Avenue
Bloomfield Hills, Michigan 48304
(248) 258-1616
hessell@butzel.com
Attorneys for Freedom From Religion Foundation, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

s/ Danielle J. Hessell
Danielle J. Hessell (P68667)
Butzel Long, a professional corporation
Stoneridge West
41000 Woodward Avenue
Bloomfield Hills, Michigan 48304
(248) 258-1616
hessell@butzel.com